**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GARY L. ARCHER,**

    **Plaintiff,**

v.                                                                                          Case No. 8:06-CV-541-T-EAJ

**MICHAEL J. ASTRUE**[1]
**Commissioner of Social Security,**

    **Defendant.**
_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 10).

applicable legal standards. See 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff alleges an onset of disability beginning February 28, 2003 due to right heel and right leg impairments, back and heart trouble, asthma, high blood pressure, gastritis, and hiatal hernia. (T 13, 71, 79) Sixty-three years old at the time of the hearing, Plaintiff graduated from high school, has no college education, and received on the job training in his relevant work experience, "selling commercial AC contracts" and sales management. (T 80, 85, 445-447) A hearing was held before the ALJ on April 12, 2005. (T 13, 442)

In the September 21, 2005 decision denying benefits, the ALJ found that the Plaintiff "has not engaged in substantial gainful activity since the alleged onset of disability." (T 20) The ALJ determined that Plaintiff's "inborn coronary and aortic artery disorder (possible Marfan's syndrome)" "allergic chronic obstructive pulmonary disease" are severe impairments but do not

2

meet or medically equal an impairment listed in the Listing of Impairments. (Id.) The ALJ also found that Plaintiff's testimony regarding his limitations and inability to work was not entirely credible. (T 21)  The ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform light work.[3] (T 19, 21)  The ALJ determined that Plaintiff's "past relevant work as a sales representative, and regional manager, in the air conditioning field do not require the performance of work-related activities precluded by his residual functional capacity," and that Plaintiff's chest disorder did not prevent him from performing such past relevant work. (T 21) Therefore, the ALJ found Plaintiff was not under a disability as defined by the Act and was thus not entitled to benefits. (Id.)  On January 30, 2006, the Appeals Council denied Plaintiff's request for review. (T 4-7)

Plaintiff's memorandum of law sets forth two issues: 1) the ALJ erred by not giving proper weight to Plaintiff's treating physicians in finding that Plaintiff could return to his relevant work; and 2) the ALJ failed to appropriately apply the Medical Vocational Guidelines (Dkt. 11). Embedded in these argument are other issues.  Those issues which are developed legally and factually the court will address; those which are "shotgun" type of arguments will not be addressed as it is incumbent on Plaintiff to establish his arguments with specificity, not in a conclusory manner.

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

---

[3]Addressing Plaintiff's RFC, the ALJ found: "The claimant retains the residual functional capacity to perform the exertional demands of up to light work.  Climbing, balancing, or kneeling are limited to occasionally; he should avoid work involving concentrated exposure to temperature extremes or noxious dust, fumes or gases and poorly-ventilated areas, but sunlight exposure is not ruled out as such." (T 21) (Emphasis in original)

**II.**

**A.** Plaintiff contends that the ALJ erred in not considering and giving adequate weight to Plaintiff's treating physicians' testimony. Specifically, Plaintiff contends that the ALJ's finding that he can return to his past relevant work as a sales representative, and regional manager, in the air conditioning field directly contradict findings of Rafeal Blasini, M.D. ("Dr. Blasini"), Plaintiff's treating physician, and John Nobel, M.D. ("Dr. Nobel"), Plaintiff's treating cardiologist.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440-41 (11th Cir. 1997) (citations omitted). Good cause exists when (1) the opinion of the treating physician was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the opinion of the treating physician was conclusory or inconsistent with the doctor's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citation omitted). If the ALJ discredits the treating physician's testimony, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis, 125 F.3d at 1440 (citation omitted).

In a Functional Capacities Assessment ("FCA") questionnaire, Dr. Blasini indicated that Plaintiff is unable to tolerate heat, cold, heights, chemicals, vibration, fumes, and gases. (T 334) Dr. Blasini further indicated that Plaintiff can occasionally lift over five pounds but never lift over twenty pounds and can stand for zero to two hours total during a day, sit for two to four hours total during a day, and walk for zero to two hours a day. (T 333) Dr. Blasini determined that Plaintiff could not return to work. (T 334) Dr. Nobel also completed an FCA, indicating that Plaintiff cannot

lift more than twenty pounds, but he did not place any limits on standing, walking, or sitting. (T 204-204A) Dr. Nobel further determined that Plaintiff can tolerate heat and cold but cannot tolerate gases, fumes, mists, odors, chemicals, humidity, and dust. (T 204A) Dr. Nobel released Plaintiff for part-time work. (Id.) Dr. Nobel's notes of January 29, 2003 indicate that Plaintiff has moderate, chronic aortic regurgitation and dyspnea on exertion and fatigue. (T 210) Dr. Nobel concluded that Plaintiff has "First degree AV block." (Id.) In Dr. Nobel's notes from November 3, 2004, he assessed Plaintiff as having "moderate aortic insufficiency - slightly progressive." (T 402)

In regards to Plaintiff's heart condition, a letter, dated June 8, 2004, to Dr. Nobel and Dr. Blasini from Scott Bronleewe, M.D. ("Dr. Bronleewe") of Cardiac Surgery Associates of Tampa stated, "[Plaintiff] also has some mild to moderate aortic insufficiency" but that "I am seeing him now in a follow-up over a year later, at which time he has had a repeat CT scan which shows no change in the size of the ascending aorta." (T 395) Dr. Bronleewe concluded that "[h]e may continue his normal activities but should refrain from heavy lifting or any activities which would abruptly increase his blood pressure." (T 395-96) In a previous letter dated November 18, 2003, Dr. Bronleewe concluded "clinically he certainly has no symptoms of aortic insufficiency." (T 398) In February 2003, Plaintiff had a stress and myocardial test, which returned normal results. (T 420) Finally, in November 2005, Plaintiff had an echo/doppler exam that Dr. Noble interpreted as showing a "slight increase in aortic regurgitation compared to previous echo in 10/04, otherwise no significant changes" and "mild left ventricular enlargement" and "mild left ventricular hypertrophy." (T 440)

While the ALJ does not refer to the treating physicians by name, he stated "[i]n regard to the chest disorders, the clinicians were mostly non-committal about work capacity, and did not state that

stress necessarily worsened what is essentially an inborn condition." (T 17) The ALJ also indicated that the "[p]hysicians did not specifically state that light activity would <u>cause</u> greater risk of vascular breakage" and that while the cardiac physician raised the possibility of dysrhythmic findings that could lead to strokes or sudden fainting, "it was not definitively corroborated." (<u>Id.</u>) (Emphasis in original)

However, the ALJ's decision will stand "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings." <u>Wright v. Barnhart</u>, 153 F. App'x 678, 684 (11th Cir. 2005) (citing <u>Diorio v. Heckler</u>, 721 F.2d 726, 728 (11th Cir. 1983)). The failure to refer specifically to what weight each treating physician's testimony is given constitutes harmless error when the treating physician's opinion does not directly contradict the ALJ's findings. <u>Id.</u> On the other hand, where the ALJ does not reference the treating physicians' conclusions and relies mainly on the testimony of a non-treating physician, the error is not harmless and warrants remand. See <u>Miller v. Barnhart</u>, 182 F. App'x 959, 964 (11th Cir. 2006).

In this case, Plaintiff was also seen by two non-treating physicians, Murthy Ravipati, M.D. ("Dr. Ravipati"), and Hamsaveni Kambam, M.D. ("Dr. Kambam"). In a Physical Residual Functional Capacity Assessment dated May 27, 2003, Dr. Ravipati determined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds, stand and walk for a total of 6 hours in an eight hour work day, sit for a total of six hours in an eight hours work day, and did not have any postural restrictions or environmental limitations. (T 213, 215-16) Dr. Ravipati noted that "in spite of a. [sic] aneurysm . . . I doubt there is marked limitation in overall p. [sic] activity besides palpitations" and that "severity to the extent of total disability is not supported by p. [sic] exams."

(T 214, 217)   On September 9, 2003, Plaintiff received another independent assessment by Dr. Kambam who determined that Plaintiff could occasionally lift fifty pounds, frequently lift less than twenty-five pounds, stand and walk for a total of six hours in normal work day, and did not have any postural restrictions but needed to avoid concentrated exposure to extreme heat and cold.  (T 356-359)

The ALJ's findings in this case clearly contradict Dr. Blasini's determination that Plaintiff could not return to work and Dr. Nobel's determination that Plaintiff could only work part-time. Further, it is unclear whether the ALJ relied upon the findings of the non-treating physicians over Plaintiff's treating physicians in making his determination that Plaintiff could return to his past relevant work.  See Miller, 182 F. App'x at 964 (remand required where ALJ failed to reference treating physicians' conclusions and primarily relied on non-treating physician's evaluation of the claimant).

Additionally, the Vocational Expert's ("VE") testimony in this case is conflicting and confusing.  During the hearing, the VE testified that sales is considered skilled, light work and that Plaintiff's previous regional manager position is considered skilled, sedentary work by the Dictionary of Occupational Titles ("DOT"). (T 460) The VE also determined that "that hypothetical person by DOT should be able to do that job."  (T 463)  Although the VE testified that for a sales person "there's going to be some exposure [to heat and cold] but maybe not enough to eliminate that person from doing that job, based on the hypothetical," the VE initially testified "the door to door sales jobs would be out because you're exposed to the extremes in terms of temperatures, extreme heat," and extreme heat included "[t]he outdoors, walking door to door, knocking on, making the cold calls and that is my understanding in testimony and also it was in 6E that that was a tough, cold,

contact job." (T 464, 461) However, after discussing the differences between exposure to a commercial freezer or work in a boiler room, the VE, in regards to the sales position, determined "you're not indoors eight hours a day so there is some exposure." (T 463) At this point, the ALJ clarified that the hypothetical pertained only to concentrated exposure. (Id.) Subsequently, the VE testified that looking at it from a DOT perspective "[t]he DOT would not really address that with those specifics and to answer your question, that hypothetical person by DOT should be able to do that job." (Id.)

In regards to sitting, walking and standing, the VE determined that the sales position was "doable." (T 468-69) Again there is some confusion in the VE's testimony. While he testified that the sales position was "doable," the VE also testified that the "DOT definition is frequently able to walk and stand, this would be less than frequently." (T 469) Likewise, the VE initially testified that Dr. Blasini's assessment would preclude Plaintiff from working part-time. (T 466) However, after adding the maximum hours marked on the assessment for sitting, standing, and walking, the VE determined that Plaintiff could work full-time. (T 467)

In determining whether Plaintiff is disabled, the ALJ relied both upon the VE's testimony and the medical evidence declaring:

> The impartial vocational expert testified that based upon the claimant's residual functional capacity, he could return to his past relevant work as a manager. He only precluded a man with the aforementioned work capacity from returning to his past work as a sales representative due to possible sunlight exposure therein, if such sunlight were to result in extreme heat. (That is, a sales person may have to do some of his sales out of doors). Nevertheless, the physicians, and thus the undersigned, have not made that correlation between extreme heat and sunlight, even if solar exposure might induce some heat. . . . At the least, the moderate sunshine exposure as such did not reportedly aggravate his breathlessness in his own

>           situation. The outdoors also would presumably be well-ventilated,
>           and it is unlikely that he worked in such extremely polluted settings
>           as fields or chemical waste plants . . . . The undersigned therefore
>           also finds that the work of salesman was not intrinsically so high in
>           environmental stressors as to be beyond his capacities.

(T 20) (Emphasis in original)

Thus, in light of the VE's confusing testimony and since the ALJ's decision denying benefits is inextricably tied to this testimony, remand is necessary.

In determining whether to remand, "if the Commissioner's decision is supported by substantial evidence [the court] must affirm, even if the proof preponderates against it." Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996) (citation omitted). However, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley, 608 F.2d at 236. When this court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison, 814 F.2d at 588. Because the ALJ did not properly weigh the treating physicians' testimony, this court cannot determine whether the ALJ's determination is supported by substantial evidence and remand is warranted. On remand, the Commissioner shall expressly evaluate the opinions of Dr. Blasini and Dr. Nobel under the standard set forth in Lewis, *supra*.

**B.** Plaintiff also contends that the ALJ should have used the Medical Vocational Guidelines (the "Grids") to determine disability. Specifically, Plaintiff asserts that "[e]ven if Archer were able to perform light work on a sustained eight hour per day basis, application of Appendix 2, Subpart P of Part 404 - Medical Vocational Guidelines . . . directs a finding of 'disabled.'" (Dkt. 11 at 6)

However, the Grids apply only "where an individual with a severe medically determinable

physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a). See also Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987). Because the ALJ found that "claimant's medically determinable chest disorder does not prevent him from performing past relevant work," and "claimant's past relevant work as a sales representative, and regional manager, in the air conditioning field do not require the performance of work-related activities precluded by his residual functional capacity" (T 21), the Grids do not apply. However, should the findings of the Commissioner change upon remand regarding Plaintiff's residual functional capacity and past relevant work, the use of the Grids may be required. All that can be said at this point is that, based on the present record, Plaintiff's argument as to issue three is without merit.

## CONCLUSION

In concluding that remand for further fact-finding is necessary due to errors of law at the administrative level, this court expresses no view as to what the outcome of the proceedings should be. On remand, each party shall have the opportunity to present additional evidence.

Accordingly and upon consideration it is **ORDERED AND ADJUDGED** that:

(1) the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings and consideration consistent with the foregoing; and

(2) the Clerk of Court shall enter final judgment in accordance with 42 U.S.C. § 405(g) as a "sentence four" remand and close the file, with each party bearing his own costs and expenses.

**DONE AND ORDERED** in Tampa, Florida on this 27th day of March, 2007.

_____
ELIZABETH A JENKINS
United States Magistrate Judge